## Craig *against* Watt.

A devised a tract of land thus : " to my wife Mary, for and during her natural life, if she shall so long remain my widow," " but if she should marry, I do order that her husband have no other privilege than his living on the place for and during the natural life of my said wife as aforesaid, and no longer:" *Held*, that such devise created an estate for life in the wife, which was not subject to be incumbered by her husband.

ERROR to the district court of *Allegheny* county.

James Craig against David Watt.   Ejectment for the three-fourths part of a tract of land.

Powell Aten died seised of the land, having made his will, by which he disposed of the same as follows:

" And as to such worldly estate wherewith it hath pleased God to bless me in this life, I give and dispose of the same in the following manner, to wit:—*Imprimis*, it is my will, and I do order that my just debts and funeral expenses be fully paid and satisfied; and as touching the rest, residue and remainder of my estate, real and personal, of what kind or nature soever the same may be, in the said county of Allegheny or elsewhere, I give, devise, and bequeath to my dearly beloved wife Mary, for and during her natural life, if so long she shall remain a widow, and immediately after her decease, to descend to my four children, to wit, Paul, Sally, Adrian and John, in equal shares alike, as tenants in common, and not as joint tenants; but in case my said wife shall marry, it is my will, and I do order that her husband shall have no other privilege than his living on the place for and during the natural life of my said wife as aforesaid, and no longer.   It is also my will, and I do order that the land shall not be sold till my youngest son John shall arrive at the full age of twenty-one years, and in case any of my said children should die before that time, then, in that case, it shall be divided between the survivors, or survivor of them, or the heir of such survivor.   It is also my will, and I do order that in case it should happen that there should not be sufficient for the support and schooling of my said children, that my executors may rent the land, or so much thereof as will be sufficient to answer the purposes aforesaid."

The shares of the said Powell, Adrian and Sarah, in the said land, had become vested before the institution of this suit, in the plaintiff, James Craig.

Admitted that the widow of testator was married about fourteen years ago, to John Creighton, and that the youngest son of testator was of age in 1837.   John Creighton and wife left the farm about

[Craig v. Watt.]

eleven years ago, and lived in the neighbourhood until about five years ago, when they removed to Ohio, where they have since resided.   Since their removal from the farm it has been leased by them, and is now in possession of David Watt, who is tenant to said Creighton and wife.

*Grier*, president, instructed the jury that the widow of the testator took an estate for life, qualified only as to the power of her husband over it, and directed them to render a verdict for the defendant.   Verdict and judgment accordingly.

*Williamson*, for plaintiff in error, cited 1 *Prest. on Est.* 195; *Co. Lit.* 205, *b.* note, 94; 4 *Kent. Comm.* 128; 2 *Cruise's Dig.* 20; 2 *Mad. Chan.* 31; 2 *Rawle* 215.

*Loomis*, *contra*, cited 5 *Mass. Rep.* 180; 1 *Term Rep.* 389; 3 *Whart.* 583; 1 *Rop. Leg.* 558, 526.

The opinion of the Court was delivered by

GIBSON, C. J.—This is a question of intention, not of technical expression.   The devise is explicitly to the widow for life in the first instance; and the qualification annexed to it, interpreted by the object, cannot be taken for a conditional limitation.   We are to discover the principal intent in order to carry it out by so modifying the estates created, as to give it effect even at the expense of particular provisions which, rigidly interpreted, might seem to stand in its way; and it meets us at the threshold.   It was to provide a home for his family which could not be reft from it by the improvidence of a second marriage.   The devise is, "to my dearly beloved wife Mary, for and during her natural life, if she shall so long remain my widow;" and if it had stopped there, the estate would have ceased at her marriage, even without a devise over. But if she should marry, what then?   Why then "I do order that her husband have no other privilege than his living on the place for and during the natural life of my said wife, as aforesaid, and no longer."   That, and not forfeiture, is the alternative.   In other words, she shall have the estate with all the incidents of property, except a power to transfer her dominion over it to a husband.   But an attempt to preclude his right to possess it during the coverture would have been absurd, had the testator supposed that after her marriage she would have no estate to possess.   Whether, as it was expressed in Hannay *v.* Smith, 4 *Whart.* 129, he could engraft on an absolute gift, not by way of cesser or donation over, a present disability to transfer the dominion over it by marriage, is not the matter in hand: it is sufficient for the question of intention that he thought he could, and the words "if she shall remain a widow," indicate an intent, not that the estate should cease at her marriage, but that she should not have it on terms which enable her husband to encumber it.   But again, if her estate ceased, what became of

[Craig v. Watt.]

it? It was not devised over; for the children were directed to take what the law gave them, and consequently by descent, which, however, was expressly suspended till her death; and the fee could not be in abeyance in the meantime. To give effect not only to the intention therefore, but the requisitions of the law, we must say, that it remained in her. And this result is entirely consistent with, as well as the executor's express power to lease which, being a contingent provision for a particular application of the gift, did not propose to vary the interests carved out of it; as his implied power to sell which could not consistently be exercised in her lifetime, nor even at her death unless the youngest child had come of age. The intention then was, that the widow's marriage should preclude the exercise of a power over the property by her husband, not that it should work a forfeiture of it; and so far as the law will allow us to do, we are bound to give effect to it.

Judgment affirmed.